Argued October 28, reversed and remanded November 24, 1965

# STATE OF OREGON *v.* FOSTER
407 P. 2d 901

*Charles Burt,* Salem, argued the cause for appellant. On the brief were Burt & Ertsgaard, Salem.

*J. R. Thomas,* Deputy District Attorney, Klamath Falls, argued the cause for respondent. With him on the brief was Sam A. McKeen, District Attorney, Klamath Falls.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, GOODWIN, DENECKE, HOLMAN and SCHWAB, Justices.

SLOAN, J.

Defendant was convicted of manslaughter. His appeal from the conviction poses a question not previously considered by this court. To put the problem in perspective it will be better to relate the basic facts.

Defendant was charged with shooting and killing a woman during the course of a spree at a rural residence in Klamath county. It was claimed, in his defense, that defendant was not present when the shooting occurred. Some of the state's evidence was that the shooting may have occurred at about 10 p.m. of the day of the event. One of the alleged eye-witnesses, Thompson, testified that it had happened at about 3 p.m. Defendant was present at the scene in the afternoon but was not there after about 5 p.m. The difference in time was, therefore, very material to the defense. There was some evidence that in a pre-trial written statement of the eye-witness, Thompson, he had stated that the shooting was later in the evening. During the cross-examination of Thompson defendant asked to have the pre-trial statement made available to him so that he could use it on cross-examination to impeach the witness' direct testimony. The court refused. The question presented is: Did the court err in denying defendant access to the pre-trial written

statement of the state's witness for the purpose of cross-examination?

■ Although there are cases to the contrary, the rule now generally accepted is that a previous written statement of a witness should be made available to defendant for possible impeachment on cross-examination of the witness. *State v. Hunt,* 1958, 25 NJ 514, 138 A2d 1, is a treatise on the subject. The opinion, by Mr. Justice Jacobs, examines all of the contending authorities and concludes that "\* \* \* where it appears that a state's witness had made prior notes or statements relating to the subject matter of the direct testimony which he has given, the defense is entitled to inspect and use on cross-examination the prior notes or statements if they are or can be made available. \* \* \* And the principle is generally applicable without any preliminary showing of inconsistency \* \* \* or any resulting right in the State to introduce the notes or statements as corroborative evidence on its behalf." 138 A2d 10. The *Hunt* opinion is so exhaustive that it would be fruitless repetition to again discuss the authorities and reasons which justified the quoted conclusion. A similar opinion is found in *People v. Riser,* 1956, 47 Cal2d 566, 305 P2d 1.

■ It is contended that the statements or documents should not be produced unless it can be shown that they would be admissible into evidence if they are made available. The fallacy of the argument is obvious. Neither counsel or court can determine the admissibility of a writing until it is examined. It is more than likely that statements by witnesses could contain matter that would provide usable impeaching statements but also contain prejudicial irrelevances that could not go to the jury. *Gordon v. United States,* 1953, 344 US 414, 416, 73 S Ct 369, 97 L Ed 447. *People v. Riser,*

supra, 305 P2d 14. If the statement were to be admitted, the screening out of irrelevant matter would present no more difficulty than the courts frequently consider in admitting written material. The fact that the statement might not be admissible does not justify a refusal to permit the use of the statement for proper impeachment purposes.

It has been urged that the rule we approve is of recent origin and comes as an aftermath of *Jencks v. United States,* 1957, 353 US 657, 77 S Ct 1007, 1 L Ed2d 1103, and the subsequently enacted Jencks Act (18 USCA 3500, (1957)), and is, therefore, limited to practice in the Federal courts. In essence the Jencks Act only codifies the rule that had been of long standing in both federal and many state courts. Orfield, Discovery and Inspection in Federal Criminal Procedure, 1957, 59 W Va L Rev 221. See *Gordon v. United States,* supra, 344 US 419, where the court, in adopting this rule, made this mention of its prior existence: "Despite some contrary holdings on which the courts below may have relied, we think their reasoning is outweighed by that of highly respectable authority in state and lower federal courts in support of the view that an accused is entitled to the production of such documents.*" (Footnote of citations omitted). The *Gordon* opinion utilized a statement, also found in other cases, by Judge Cooley in *People v. Davis,* 1884, 52 Mich 569, 573, 18 NW 362: "The State has no interest in interposing an obstacle to the disclosure of facts, unless it is interested in convicting accused parties on the testimony of untrustworthy persons."

■ In the instant case the error requires reversal. The contradictory statement, if it were made, would

have been crucial to defendant's ability to fully cross-examine the witness.

■ Before the trial defendant filed a motion which requested a pre-trial examination of the alleged written statements of several witnesses and the right to examine an autopsy report. The trial court allowed access to the autopsy report but denied the right to examine the statements of the witnesses. This pre-trial refusal is also assigned as error. We think the court was right.

All of the courts have recognized a distinction between a pre-trial examination of the statements of the state's witnesses and the right to examine a statement during trial for purposes of cross-examination. It is generally held that pre-trial discovery of the state's evidence is not permissible. 6 Wigmore, Evidence (3d ed 1940), § 1859, pages 475, 476.

It is said that pre-trial discovery permits an accused to fabricate evidence for his defense. More important, however, "It was felt, furthermore, that to allow the defendant to compel production when the prosecution could not in its turn compel production from the defendant because of the privilege against self incrimination would unduly shift to the defendant's side a balance of advantages already heavily weighted in his favor." *People v. Riser,* supra, 47 Cal 2d 585, 305 P2d 13. We recognize that the rule restraining pre-trial discovery is the subject of debate and criticism. See, for example, Krantz, Pretrial Discovery in Criminal Cases, 1962, 42 Neb L Rev 127. We are not convinced that the rule is unsound. There was no error in the courts refusal to permit the pre-trial discovery.

The other assignments do not warrant discussion. Reversed and remanded for a new trial.