Argued October 29, 1968, affirmed February 13, 1969

# STATE OF OREGON, *Respondent, v.*
# BRUCE JACOBS, *Appellant.*
### 450 P. 2d 542

*John Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*F. LaGard Smith,* Deputy District Attorney, Vale, argued the cause for respondent. On the brief was H. Clifford Looney, District Attorney, Vale.

Before McALLISTER, Presiding Justice, and SLOAN, O'CONNELL, GOODWIN, DENECKE, HOLMAN and MENGLER, Justices.

DENECKE, J.

The defendant was convicted of an aggravated assault and he appeals.

His first assignment of error—that there was not sufficient evidence to support defendant's conviction—is not well taken.

Defendant's remaining assignment of error cannot be disposed of as summarily. Defendant assigns as error the trial court's refusal to grant defendant's motion that the notes of a testifying police officer be turned over to defendant to use in cross-examination of the officer.

Whether or not it was the defendant who committed the alleged assault was a critical issue. An Ontario police officer testified for the state that the prosecuting witness gave him a description of the man who she said assaulted her, and that this description enabled the officer to focus his investigation upon the defendant. The officer then described the defendant's appearance at the time he was arrested.

On cross-examination the officer said he had made notes in his note book concerning the investigation.

However, he stated that he had not at any time refreshed his recollection from the notes. Furthermore, he did not know whether he had made any notes regarding either the description given him by the prosecuting witness or any other matters concerning the defendant's description. The defendant then made his request to examine the notebook.

In *State v. Foster*, 242 Or 101, 407 P2d 901 (1965), the time of an alleged killing was a material issue. One of the state's witnesses testified that the killing occurred at 3:00 p.m. There was evidence the witness had made a prior written statement setting the time as 10:00 a.m. During cross-examination of the witness the defense asked the court to require the prosecution to furnish the defense with the prior written statement. The trial court refused and we held this was error. We stated: "Although there are cases to the contrary, the rule now generally accepted is that a previous written statement of a witness should be made available to defendant for possible impeachment on cross-examination of the witness." 242 Or at 103.

In *State v. Foster*, supra (242 Or 101), we stated that the rule we were adopting was similar to that recognized in *Jencks v. United States*, 353 US 657, 77 S Ct 1007, 1 L Ed2d 1103 (1957), and subsequently codified, 18 USCA § 3500, but which was a rule of long standing in both state and federal courts.

In *State v. Tranchell*, 243 Or 215, 412 P2d 520 (1966), we held it was proper to order an officer who has testified on direct examination to provide the defense with his notes concerning the particular charge involved, but that the officer need not make available notes of his investigations of other matters.

*State v. Foster*, supra (242 Or 101), and *State v. Tranchell*, supra (243 Or at 215), hold that the de-

fendant has a right to have the state produce prior statements of prosecution witnesses containing material relevant to the witness's testimony. This includes statements in police officers' notes of investigations. This right of the defendant is to enable him to use the statements in cross-examination to test the accuracy of the prosecution's evidence.

■ There is and should be, however, some discretion given the trial court in passing upon the request of the defense. The majority in *Palermo v. United States,* 360 US 343, 353, 79 S Ct 1217, 3 L Ed2d 1287 (1959), interpreting the Jencks Act, stated: "Final decision as to production must rest, as it does so very often in procedural and evidentiary matters, within the good sense and experience of the district judge guided by the standards we have outlined, and subject to the appropriately limited review of appellate courts." Quoted with approval in *United States v. Augenblick,* 393 US 348, 89 S Ct 528, 21 L Ed2d 537 (1969).

The only testimony of the investigating officer which was prejudicial was that the officer focused on the defendant as a suspect because of information, including a description, given the officer by the prosecuting witness. Neither the prosecuting witness nor the officer was asked or testified what that description was. The officer and the defendant agree on the appearance of the defendant at the time of the arrest.

The form of the officer's notes is unknown. Notes of an investigating officer are usually fragmentary and, therefore, do not lend themselves to impeachment as readily as statements.

■ Considering the state of the evidence when the request for the notes was made and the nature of the material requested, the trial court could rightly decide

that it was unlikely that the production of the notes would have assisted the accused.[1]

"It is difficult to tell from this record the precise nature of Mendelsohn's 'notes,' whether they recorded part of Hodges' interview or whether they were merely a memorandum giving names, places, and hours. Certainly they were not a statement covering the entire interview; and if they were a truncated version, they would pose the question reserved in Palermo v. United States, 360 US 343, 3 L Ed2d 1287, 79 S Ct 1217. Since on examination of the record we are left in doubt as to the precise nature of the 'notes,' we cannot say that the command of the Jencks Act was disobeyed when they were not ordered to be produced." *United States v. Augenblick,* supra (21 L Ed2d at 544).[2]

Affirmed.

SLOAN, J., concurring.

There is much more to the opinion in *State v. Hunt,* 1958, 25 NJ 514, 138 A2d 1, than expressed in the majority opinion. Further quotation from that opinion,

---

[1] The advice given to district judges in Palermo v. United States, supra (360 US at 354), is appropriate for state trial judges: "However, when it is doubtful whether the production of a particular statement is compelled by the statute, we approve the practice of having the Government submit the statement to the trial judge for an in camera determination."

[2] Under the circumstances present in this case, the issue is one of criminal procedure and not constitutional law. United States v. Augenblick, supra (21 L Ed2d at 545):

"* * * Indeed our Jencks decision and the Jencks Act were not cast in constitutional terms. Palermo v. United States, supra at 345, 362, 3 L Ed2d at 1291, 1300. They state rules of evidence governing trials before federal tribunals; and we have never extended their principles to state criminal trials. It may be that in some situations, denial of a Jencks Act type of a statement might be a denial of a Sixth Amendment right. There is, for example, the command of the Sixth Amendment that criminal defendants have compulsory process to obtain witnesses for their defense. Palermo v. United States, 360 U. S. 343, 362, 3 L Ed2d 1287, 1300 (concurring opinion). * * *"

which we approved in *State v. Foster,* 1965, 242 Or 101, 407 P2d 901, should be helpful to the trial courts when confronted with the commonplace request made in this case:

"\* \* \* We are concerned here only with the defendant's application during the trial for production of the notes made by the State's witness Bates [a police officer], in order that they might be used during his cross-examination for the purpose of testing the credibility and accuracy of the testimony given on his direct examination. It is difficult to see what plausible objection may be advanced to such use of the notes. Cross-examination is the most valuable safeguard that has been discovered in the judicial search for truth, and if cross-examination is to be at all effective it must have wide latitude in the testing of the recollection and fidelity of the witness. It seems to us that, in the instant matter, every consideration of justice and fairness dictated that the notes of the witness Bates bearing on the subject of his direct examination be made available to the defendant for use in cross-examination. \* \* \*." *State v. Hunt, supra,* 25 NJ at p 524, 138 A2d at p 6.

"\* \* \* The notes were made by Bates when the defendant's statements were very fresh in his mind and even if they had never been used to refresh his recollection they would have been highly relevant to his cross-examination. After the defense had inspected them it might have found them to be simply corroborative of the oral testimony given by Bates before the jury. In such event, no one would have been harmed by the inspection. On the other hand, it might have found significant omissions, different interpretations, or even affirmative inconsistencies, which when pursued, might have brought along a truer and more accurate portrayal before the jury. \* \* \*." *State v. Hunt, supra,* 25 NJ at p 530, 138 A2d at p 10.

In the instant case it was apparent that the notes of the officer were readily available and could have been produced in a few minutes time. There was nothing unreasonable about the request.

There were contradictions in the testimony of the complaining witness and that of the police officer. The contradictions might have been explained if the notes had been produced. If the notes were of no value, as expressed in the quotation above, no possible harm would have resulted.

I concur in the result because I have doubts that the error was prejudicial in this case.