Argued June 2, reversed with instructions October 14, petition
for rehearing denied November 17, 1970

## STATE ex rel DOOLEY, *Respondent, v.*
## CONNALL, *Appellant.*

475 P2d 582

*Jacob B. Tanzer*, Solicitor General, Salem, argued the cause for appellant. With him on the briefs was Lee Johnson, Attorney General, Salem.

*Julian Herndon*, Portland, argued the cause for respondent. On the brief were Herndon & Ofelt, and John Pickard, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, SLOAN,* HOLMAN,** TONGUE, HOWELL and SCHWAB, Justices.

HOWELL, J.

This is an appeal from a finding and judgment of contempt of court arising out of the refusal of a deputy district attorney to obey a pre-trial order of the court in a criminal case. The order required the deputy to present the district attorney's entire files to the court for *in camera* inspection by the court to determine if the files included matter exculpatory to the defendant.

One Ray Lampkin, Jr., was charged in five separate indictments in Multnomah County with at-

---

* Sloan, J., resigned September 30, 1970.
** Holman, J., did not participate in this decision.

tempting to procure a female to engage in prostitution, receiving the earnings of a common prostitute, and procuring a female to engage in prostitution. His counsel filed identical pre-trial motions for the production, inspection and copying of various documents in the possession of the prosecution on the grounds that the items were material to the preparation of the defense. The list included:

(1) A list of criminal convictions and/or arrests of each of the prosecutions' witnesses as follows:
    a. Janet Alice Gaitanakis
    b. Gloria June Wall

and any other witnesses unknown to the defendant.

(2) All police reports concerning the crimes Gloria June Wall has been investigated for, together with the disposition of these investigations.

(3) The statements of the prosecution witnesses, particularly statements that tend to be or are exculpatory of the defendant.

(4) Any and all evidence that is or may be exculpatory of the defendant.

(5) A list of other possible suspects, who warranted investigation in connection with the crime for which the defendant is charged.

(6) All police reports concerning statements made by Yolanda Janice Elaine Jones in connection with the defendant.

(7) A list of all officers that investigated witnesses pertaining to the defendant.

(8) A list of all prosecution witnesses.

(9) All photographs that show the defendant or any of the prosecution witnesses.

The material portions of the affidavits in support of the motions are stated as follows:

"That I am informed, have personal knowledge and believe, and therefore allege that the district

attorney, or his agents, have in their possession or can obtain all the items enumerated in the attached motion.

"I further assert that all of said items are revelant [sic] and that it is crucial to the preparation of the defense that I be allowed to inspect and copy or photograph the said items.

"I further swear that I have no other way to determine the criminal records of the various prosecution witnesses than by means of this motion.

"That without the material requested in the motion, the defendant is unable to fully prepare his defense.

"That it is necessary to obtain all names and statements of all prosecution witnesses because I have reason to believe portions or all of the statements have doubtful credibility.

"That I further believe that this is not a fishing expedition, but all items sought are revelant [sic] and necessary."

The motions were heard by the Honorable Patrick E. Dooley, a circuit judge in Multnomah County. Judge Dooley conditionally denied the motion but later continued the matter for further argument and final disposition.

At a subsequent hearing on the motion, and after some colloquy between the court and the deputy district attorney, the deputy stated that he did not feel that *in camera* inspection by the court was valid. The court then entered an order and judgment finding the deputy in contempt of court. The judgment recited that the finding of contempt was for refusing "to bring to the court at 2:00 o'clock P.M. on June 5, 1969 the entire files of the District Attorney of Multnomah County and to then and there furnish them to the court for *in camera* inspection for the purpose of

judicial determination as to whether or not said files include matter which would be exculpatory to Ray Lampkin, Jr., the defendant in said cases, * * *."

The deputy was sentenced to thirty days in the county jail with the proviso that he could purge himself by compliance with the order.

The issue presented is whether the deputy-contemnor was guilty of contempt of court for failure to turn over "the entire files of the District Attorney" for *in camera* inspection and determination by the court of the existence of matters favorable to the defendant in a criminal case.

In 1961 the legislature enacted ORS 133.755 relating to pre-trial discovery in criminal cases. The statute allows the court, on motion of a defendant, to permit the inspection of certain items obtained from or belonging to the defendant including statements or confessions made by the defendant.[1]

---

[1] "ORS 133.755. (1) Upon motion of a defendant, at any time after the filing of the indictment or information, and upon a showing that the items sought are material to the preparation of his defense and that the request is reasonable, the court may order the district attorney to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant, including written statements or confessions made by the defendant. The order shall specify the time, place and manner of making the inspection and of taking copies or photographs and may prescribe such terms and conditions as are just.

"(2) Inspection of the items described in subsection (1) of this section may be made in criminal actions in accordance with the provisions of subsection (1) of this section and no other."

In State v. Little, 249 Or 297, 306, 431 P2d 810 (1962) cert. den. March 4, 1968, 390 US 955, 88 S Ct 1048, 19 L Ed2d 1148 cited by both parties, we held that ORS 133.755 applied to discovery in criminal cases in Oregon. The opinion reserved decision on whether other types of discovery are permitted. Brady v. Maryland, 373 US 83, 83 S Ct 1194, 10 L Ed2d 215 (1963) was not mentioned in the opinion, the briefs filed in this court, or in the petition for certiorari filed in the United States Supreme Court.

None of the items listed in the motion to produce is included in the list enumerated in ORS 133.755. However, the relator-judge contends that the decision of the United States Supreme Court in 1963 in *Brady v. Maryland*, 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), constitutionally enlarges the scope of discovery beyond that allowable under ORS 133.755.

In *Brady* the defendant and a companion were found guilty of murder and sentenced to death. At the trial Brady admitted his participation in the murder but claimed that his companion did the actual killing. Prior to the trial Brady had requested the prosecution to disclose his companion's extra judicial statements. Several statements were disclosed but one in which the companion admitted the killing was withheld. Brady's request for relief under the Maryland Post Conviction Procedure Act was granted on the theory that although the statement would not affect Brady's responsibility for first degree murder it was material on the question of punishment and the suppression of the statement violated due process. In affirming the Maryland Court of Appeals, the United States Supreme Court held that the prosecution should not have withheld the exculpatory statement and also pronounced the broad rule:

> "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

As a result of the decision in *Brady*, the prosecution must, upon request, disclose evidence "favor-

able" to the accused. Difficult questions arise as to when evidence in the possession of the prosecution and favorable to the accused must be disclosed and how it should be disclosed. Traynor, *Ground Lost and Found in Criminal Discovery*, 39 NYUL Rev 228 (1964); *The Prosecutor's Constitutional Duty to Reveal Evidence to the Defendant*, 74 Yale LJ 136 (1964); Ellis, *Discovery in Oregon Criminal Cases*, 4 Willamette LJ 167 (1966); Collins, *Disclosure—An Instrument of Policy*, 47 Or L Rev 71 (1967); Carter, *Suppression of Evidence Favorable to an Accused*, 34 FRD 87 (1964). *See* ABA Project on Minimum Standards for Criminal Justice, "Standards Relating to Discovery and Procedure Before Trial" (Tentative Draft, 1969).

The contemnor argues that the disclosure should not be made pre-trial.

Under ORS 133.755 the motion of the defendant to inspect the items mentioned therein may be made at any time after the filing of the indictment or information.

In regard to previous written statements made by witnesses testifying for the prosecution, this court held in *State v. Foster*, 242 Or 101, 407 P2d 901 (1965), that the defendant was entitled to inspect and use such statements at the time of cross-examination. The court cited *Jencks v. United States*, 353 US 657, 77 S Ct 1007, 1 L Ed 2d 1103 (1957); *Gordon v. United States*, 344 US 414, 73 S Ct 369, 97 L Ed 447 (1953), and the Jencks Act, 18 USC § 3500 (1957). The court also held that while such statements of prosecution witnesses must be made available to the defense at the time of cross-examination, the prosecution was not required to pro-

duce such statements for pre-trial examination by the defendant.[@]

■ It is true that the decision in *Brady* did not specify when the disclosure of exculpatory matters should be made. The decision, however, does not require that the disclosure be made pre-trial as a matter of constitutional right. *United States v. Manhattan Brush Co.*, 38 FRD 4 (SDNY 1965); Traynor, *Ground Lost and Found in Criminal Discovery, supra*; ABA Project on Minimum Standards for Criminal Justice, *supra*, p. 73.

In *United States v. Gleason*, 265 F Supp 880, 884 (SDNY 1967), the court characterized the problem of when exculpatory evidence should be disclosed as an "undertaking to map a still largely uncharted area." The court refused to establish a blanket rule postponing the disclosure until the time of trial, particularly in those cases where the prosecution knows of witnesses potentially useful to the defense, does not intend to call such witnesses, and knows—or should know—that knowledge by the defense at time of trial will be too late for effective preparation or use by the defense.

Also in *United States v. Cobb*, 271 F Supp 159, 164 (SDNY 1967), the court recognized that a fair trial is the obligation of the government, that in many instances the failure to disclose exculpatory evidence before trial would prevent its effective use at trial, and concluded: "In view of the practical difficulties, the

---

[@] The decision in *State v. Foster* that disclosure of written statements of prosecution witnesses is not required pre-trial is in accord with the weight of appellate decisions, 7 ALR 3rd, 126-129. *But see* ABA Project on Minimum Standards for Criminal Justice, *supra*, pp. 57-58, wherein it is suggested that the better practice would be to have the disclosure made pre-trial to avoid delay and allow adequate preparation.

decision as to whether the government possesses any such evidence must be left to its good conscience, subject to the sanction that if it delays disclosure until trial, it may risk the granting of a motion for a mistrial."

■ We conclude that with the exception of written statements of prosecution witnesses which must be made available to the defense at the time of cross examination (*State v. Foster, supra*), the exculpatory evidence, at the request of the defense, must be disclosed by the prosecution at such time as will allow the defendant to use it effectively in his own defense. In the event that the prosecution and the defense cannot agree as to the time, the trial court has the inherent power and the duty to decide the time of disclosure.

The contemnor argues that the mechanics of the discovery should be determined by the counsel in the case and not by the trial judge. It is true that *in camera* inspection by the trial judge in discovery proceedings has received mixed reactions from the courts. In *Pittsburg Plate Glass Co. v. United States*, 360 US 395, 79 S Ct 1237, 3 L Ed 2d 1323 (1959), the United States Supreme Court reserved decision on whether inspection of a transcript of testimony before a grand jury was discretionary or mandatory on the trial court in the absence of a request by the defendant. In *Dennis v. United States*, 384 US 855, 86 S Ct 1840, 16 L Ed 2d 973 (1966), the Supreme Court stated the following regarding the obligation of the trial judge to examine a transcript of testimony taken before a grand jury to determine inconsistencies with trial testimony:

"Trial judges ought not to be burdened with the task or the responsibility of examining sometimes voluminous grand jury testimony in order to ascer-

tain inconsistencies with trial testimony. * * * Nor is it realistic to assume that the trial court's judgment as to the utility of material for impeachment or other legitimate purposes, however conscientiously made, would exhaust the possibilities. In our adversary system it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate."

However, *in camera* inspection was conducted by the court in *United States v. Gleason, supra,* and *Taglianetti v. United States,* 394 US 316, 89 S Ct 1099, 22 L Ed 2d 302 (1969). *In camera* inspections were also conducted in *Campbell v. United States,* 365 US 85, 81 S Ct 421, 5 L Ed 2d 428 (1961) and *Palermo v. United States,* 360 US 343, 79 S Ct 1217, 3 L Ed 2d 1287 (1959), which involved inspections under the Jencks Act, 18 USC § 3500 (c) (1957).

■ The essence of the rule of *Brady v. Maryland* is that it is a violation of due process for the prosecution, after request of the defendant, to withhold evidence favorable to the accused. The request of the defendant, in the form of a motion, should state with as much particularity as possible the evidence that the defendant contends is favorable to him. If a difference of opinion exists between the defendant and the prosecution as to whether the evidence is favorable to the defendant, the difference should be resolved by the trial court by an *in camera* inspection of the evidence.

■ For his final argument the contemnor states that he should not be found guilty of contempt of court for his refusal to make "the entire files of the District Attorney" available for *in camera* inspection by the court. The relator concedes that the judge's order ex-

ceeded the request contained in defense counsel's motion for discovery. Such a broad, sweeping order—to produce the entire files of the District Attorney—was not justified by the constitutional requirements of due process as set forth in the *Brady* decision. In fact, similar requests by defense counsel were rejected in *United States v. Cobb, supra*; (the motion, if allowed, would have required the government to open "its entire files pertaining to the case"); *United States v. Jordan*, 399 F2d 610 (1968), ("all materials which might be useful in the preparation of a defense, including names and addresses of witnesses whose statements appeared to assist neither the prosecution nor the defense and witnesses who gave no statement"); *United States v. Wolfson*, 289 F Supp 903 (1968), ("a motion to produce any exculpatory evidence under the rule of Brady v. State of Maryland"). Requests for the identity of informants, *McCray v. Illinois*, 386 US 300, 87 S Ct 1056, 18 L Ed 2d 62 (1967), *United States v. Cobb, supra.*[9]

As there was nothing in the proceedings before the court nor in the defendant's motion which would require the district attorney to turn over his entire files for inspection by the court, the cause is reversed with instructions to enter a judgment of not guilty of contempt.

---

[9] Motions which would require the prosecution to disclose its work product in the particular case should also be denied. ABA Comm. on Pretrial Proceedings, *supra*, p. 88.