Argued May 23, reversed and remanded with directions July 14, reconsideration denied August 20, petition for review allowed December 17, 1975

# STATE OF OREGON, *Appellant, v.* GLENN FREDERICK KOENNECKE (No. 13-351), *Respondent.*

537 P2d 1160

*Timothy Wood,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Dwight L. Schwab,* Portland, argued the cause for respondent. With him on the brief were James C. Niedermeyer and Hutchinson, Schwab, Burdick & Hilton, Portland.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FORT, J.

Defendant was indicted September 28, 1973, for attempted murder of one Donald M. Weber, a police officer, by "firing a high powered rifle at said Donald M. Weber from close range." ORS 163.115.

On November 23, 1973, defendant filed a motion to produce a large number of items for examination pursuant to ORS 135.815, including:

"1. All portions of the Washington County Sheriff's Vehicle, Oregon License No. E 116-270, which were removed from the vehicle in connection with the above entitled matter, including the windshield.

"* * * * *

"3. Any bullet, or portions thereof, removed from the police vehicle (See #1.)

"4. All material and items removed from the police vehicle (See #1.)

"* * * * *

"10. The service revolver used by Deputy Robert Nielson on the night of the alleged incident.

"11. Six rounds of the identical type of ammunition used on the night of this alleged incident by Deputy Nielson.

"12. The service weapon of Deputy Stephen Inhofer used on the night of this alleged incident.

"13. Six rounds of the identical type of ammunition used by Deputy Inhofer on the night of this alleged incident.

"* * * * *"

On January 18, 1974, the court entered its order requiring that the above enumerated items be turned over to defendant's attorney. Following a series of motions and hearings seeking clarification

and delineation of procedures thereon, the court, on July 5, 1974, entered the following order:

"* * * * *

"NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

"1. In accordance with the Order of this court in this cause dated January 18, 1974, the District Attorney of Washington County shall deliver to attorney James C. Niedermeyer the physical evidence in the possession, custody or control of the District Attorney. Attorney Niedermeyer shall thereupon furnish to the District Attorney of Washington County a receipt for all items delivered to him.

"2. All of said items will be returned to the District Attorney of Washington County within thirty days after the receipt thereof by attorney James C. Niedermeyer. If for any reason attorney Niedermeyer shall fail to return to the District Attorney all said items for which he has receipted within thirty days, he shall forthwith furnish a written explanation to the Court.

"* * * * *."

Thereafter the district attorney, failing to comply with that order, filed in the Oregon Supreme Court a Petition for Alternate Writ of Mandamus against The Honorable Hollie Pihl, the trial court judge, asking for relief from the orders of January 18, 1974, and July 5, 1974, above referred to. On November 13, 1974, the Supreme Court denied the petition for writ of mandamus without opinion.

Thereafter, in December 1974, the trial court held another hearing. At that hearing the state again admitted it had not complied with several portions of the court's order including that requiring it to deliver the guns and six rounds of ammunition for each to defendant's attorney for test firing and inspection as

provided in the July 5 order. The court then entered an order[1]

"* * * that the testimony of Deputy Steven Inhofer and Deputy Robert Nielsen be and the same hereby is inadmissible in any trial of the above entitled cause."

The state appeals from that order. ORS 138.060(3).

The order before us in this pretrial discovery matter contains transcripts of at least eight separate hearings relating to it. More than 18 months have elapsed since the original pretrial discovery motion was filed by defendant. Most of the ordered items not previously provided were finally, in December 1974, made available to defendant's attorney by the district attorney as ordered by the court. The two guns and one of the requested rounds of sample ammunition were not. The district attorney took the position that

---

[1] Suppression order dated December 11, 1974:

"* * * * *

"It appearing to the Court that plaintiff has complied with the order of this Court made and entered July 5, 1974, by delivering to defendant's attorney, James C. Niedermeyer, all physical evidence in the possession of the State required to be delivered by said order, excepting the service revolver used by Deputy Robert Nielsen on the night of the alleged incident, six rounds of the identical type of ammunition used on the night of this alleged incident by Deputy Nielsen, and the service weapon of Deputy Stephen Inhofer used on the night of this alleged incident; and

"It appearing to the Court that Deputies Inhofer and Nielsen have refused to deliver to defendant's attorney, James Niedermeyer, their personally owned service revolvers as required by said order dated July 5, 1974; and that the State has failed to comply with said order of July 5, 1974, in failing to deliver said service revolvers to defendant's attorney James Niedermeyer, and in failing to deliver said revolvers to the Court for delivery to defendant's attorney;

"It is, therefore, ordered that the testimony of Deputy Steven Inhofer and Deputy Robert Nielsen be and the same hereby is inadmissible in any trial of the above-entitled cause.

"* * * * *."

each of the two service revolvers was owned respectively by the named police officers and was not under the state's control, and that the officers refused to deliver them to defendant's attorney as the court order required.

■ Additionally, at the hearing in December 1974 the court was advised by counsel for both parties that the police car behind which Officer Weber was standing at the time charged in the indictment had been sold by Washington County sometime after the order of July 5, 1974 was entered. The state took the position that it was therefore impossible for it to comply with that portion of the order, supra, which ordered that portions of the car, including the door in which it was claimed that fragments had lodged or penetrated at the time of the alleged shooting, be delivered to defendant's attorney. Since, however, no portion of the order here appealed from suppressing the testimony of Officers Inhofer and Nielsen is related to that problem, there is nothing before this court to review concerning the effects, if any, of such failure. Accordingly, though urged by counsel during oral argument to consider this, we decline to do so.

The narrow question presented by this record is whether the court correctly suppressed the testimony of Officers Inhofer and Nielsen for failure of the state to comply with the order of July 5 by not delivering their service revolvers and ammunition. The state contends that the suppression order was erroneous "because the evidence (1) was not to be introduced at trial; (2) was not within the possession of the district attorney; and (3) was 'disclosed' within the meaning of ORS 135.805(2)."

■ It cannot be questioned that the defendant had the right to require the state to submit to appropriate inspection and testing on his behalf of items

which there were reasonable grounds to believe would be not only relevant but exculpatory. Prior to the adoption by the Oregon State Legislature of ORS 135.805 - 135.873, this court discussed at length the extent and nature of the Fourteenth Amendment due process rights with respect to the pretrial disclosure by the state to the defendant of evidence of an exculpatory nature having substantial relevance to the guilt or innocence of the defendant. *Hanson v. Cupp*, 5 Or App 312, 484 P2d 847 (1971), and cases therein referred to.

Here defendant contends and the state admits that one or more bullets penetrated into or through a police car door and lodged therein. Further it is conceded that both Officers Inhofer and Nielsen discharged their service pistols at the scene of the alleged crime. It is also contended that Officer Weber was standing behind this car together with defendant's wife and babysitter whom the police had just taken into custody after barring their departure from defendant's driveway and removing them from defendant's car. An important question in the case was whether or not a rifle allegedly fired by defendant at the police from his home during this period was the weapon from which a bullet or bullets striking the police car behind which Officer Weber was standing came from defendant's rifle or from the service pistols fired by other police officers.

■ The state relies in part on ORS 135.815(4)(a) as justifying their refusal to deliver the guns and requisite ammunition for testing. That statute states:

"Except as otherwise provided in ORS 135.855 and 135.873, the district attorney shall disclose to the defendant the following material and information within his possession or control:

"* * * * *

"(4) Any books, papers, documents, photographs or tangible objects:

"(a) Which the district attorney intends to offer in evidence at the trial; or

"(b) Which were obtained from or belong to the defendant.

"* * * * *."

In its statutory argument it overlooks the fact that if fired by defendant from his rifle, any bullet or fragment thereof would not only be a tangible object but, presumably, would "belong to the defendant" within ORS 135.815(4)(b), and thus disclosure would be required.

■ Irrespective of the scope of the statute, however, the state in its brief correctly concedes:

"The evidence may, however, fall within the constitutional dictates of *Brady v. Maryland,* 373 US 83, 83 SCt 1194, 10 LEd 2d 215 (1963) and *Hanson v. Cupp,* 5 Or App 312, 484 P2d 847 (1971), in that the evidence may be material to the guilt of the defendant. * * *"

In *State ex rel Dooley v. Connall,* 257 Or 94, 475 P2d 582 (1970), the court said:

"The essence of the rule of *Brady v. Maryland* is that it is a violation of due process for the prosecution, after request of the defendant, to withhold evidence favorable to the accused. The request of the defendant, in the form of a motion, should state with as much particularity as possible the evidence that the defendant contends is favorable to him. If a difference of opinion exists between the defendant and the prosecution as to whether the evidence is favorable to the defendant, the difference should be resolved by the trial court by an *in camera* inspection of the evidence." 257 Or at 103.

■ We think it clear that the defendant had a right under appropriate circumstances to have his own qualified expert make such examination of the

police car, the bullets or fragments thereof found therein, and of the guns fired by Officers Inhofer and Nielsen as was reasonably necessary to ascertain facts material to the charge. *Hanson v. Cupp,* supra; *Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963); *Pyle v. Kansas,* 317 US 213, 63 S Ct 177, 87 L Ed 214 (1942); *State ex rel Dooley v. Connall,* supra.

Whether the state has conducted its own tests and whether it chooses to offer such results in evidence is not determinative of the rights of the defendant.

We note, however, that the court's order simply directed the state to turn over to the defendant's attorney for 30 days the officers' guns for testing. The state objects to this on two grounds: first, that the officers own the guns and refused to turn them over, and second, that so broad an order endangers the necessity to preserve the chain of evidence which it has the burden to do. It was on the first ground that the trial judge concluded that it was necessary to foreclose their right to testify.

In *State ex rel Dooley v. Connall,* supra, the court said:

"We conclude that with the exception of written statements of prosecution witnesses which must be made available to the defense at the time of cross examination (*State v. Foster* [242 Or 101, 407 P2d 901 (1965)]); the exculpatory evidence, at the request of the defense, must be disclosed by the prosecution at such time as will allow the defendant to use it effectively in his own defense. In the event that the prosecution and the defense cannot agree as to the time, the trial court has the inherent power and the duty to decide the time of disclosure." 257 Or at 102.

The defendant did not identify, in his pretrial

discovery motion, or subsequent thereto when requested by the state, either the time, place or circumstances for the inspection of the requested material, nor did he identify the person or persons or their qualifications and resources for conducting such tests as might reasonably be necessary to determine facts relevant and material to the propriety of the request.

██ Here the state simply moved for clarification of the court's order directing the turning over of the named items. At trial the state has the burden to establish the admissibility of any evidence it seeks to admit, including not only the chain of possession but, where appropriate, the similarity of condition. It is also responsible for safeguarding its possession and for its ultimate redelivery to its lawful owner.

█ Accordingly, we conclude that when, as here, despite the earnest efforts of the trial court to get the parties to resolve their differences concerning what should normally be matters capable of ready agreement, it was error for the court not to have provided therefor by order after notice and hearing.

 Finally, the state asserts that since the guns were owned by the police officers personally, it lacked authority to compel their delivery for testing and examination under any circumstances not acceptable to the officers. There is no merit to this contention. *Hanson v. Cupp,* supra. Nor can the officers, any more than the owner of any other tangible item of evidence relevant and material to any case, limit or otherwise control the manner of its examination if performed pursuant to court order after notice and hearing. Furthermore, here the officers were agents of the state acting under its orders in the performance of official duties, and the guns were necessary equipment required and utilized therein.

As pointed out in the Commentary, Proposed

Oregon Criminal Procedure Code (1972) at 186, Section 322 (now ORS 135.815) and the Pre-trial Discovery provisions of Article 11 are patterned in large measure on the American Bar Association Standards Relating to Discovery and Procedure Before Trial 52-93, §§ 2.1 - 2.6 (Approved Draft 1970).

Section 2.1 of those Standards deals with the prosecutor's obligations of disclosure. Much of that section is now found as ORS 135.815. Section 2.1(d) states:

"The prosecuting attorney's obligations under this section extend to material and information in the possession or control of members of his staff and of any others who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported to his office."

Section 2.1(d) is not included as part of ORS 135.815. In the Commentary to Section 322, now substantially ORS 135.815, the Commission states:

"A. Summary

"Section 322 requires the district attorney to disclose to the defendant all of the enumerated material and information in any case in which the provisions of the Article apply. The enumeration is of material the pre-trial disclosure of which is calculated to minimize surprise, avoid unnecessary prolonged trials and provide adequate information for informed pleas and evaluation of cases before trial. The Article does not purport to include *all* information which the district attorney may be required, as a matter of due process, to disclose prior to the submission of the case to the jury. For instance, section 322 does not include all information which must be disclosed under *Brady v. Maryland,* 373 US 83 (1963), because the information is exculpatory or may tend to mitigate punishment. Disclosure under this Article occurs as soon

as practicable following the filing of charges against the defendant. The Article does not endeavor to fix the time at which exculpatory information, not specifically covered by section 322, must be disclosed. Neither does the Article eliminate the *Brady* requirement that prior demand be made for disclosure of other exculpatory evidence. See, also *Hansen* [sic] *v. Cupp* * * * [5 Or App 312] (1971), which held that the state has a duty to voluntarily disclose to defense any evidence known to the prosecution material to the issue and favorable to the accused. [Emphasis supplied.]

"* * * * *

"B. Derivation

"This section is generally derived from more extensive provisions of the ABA Standards, § 2.1.

"Unlike the ABA draft, however, this section does not require disclosure of (1) grand jury minutes of recorded testimony, excluded under section 326; (2) Information regarding electronic surveillance; and (3) Information tending to negate guilt of the accused or tending to reduce punishment therefor, except to the extent that such information is of the type specifically subject to disclosure. Other exculpatory or mitigating information would remain subject to disclosure under *Brady v. Maryland,* supra, and *Hansen* [sic] *v. Cupp,* supra." Commentary, Proposed Oregon Criminal Procedure Code, supra at 186.

It is apparent from the foregoing that the legislature in enacting ORS 135.815 was fully aware that in addition to the rights enumerated in that section, a defendant is entitled to those assured him under the Due Process Clause of the Fourteenth Amendment and specifically, as the Commentary states, to those described in *Brady v. Maryland,* supra, and *Hanson v. Cupp,* supra.

We note, too, that ORS 135.805(2) states:

"As used in ORS 135.805 to 135.873, 'disclose' means to afford the adverse party an opportunity to inspect or copy the material."

The Commentary to Section 2.1 of the A.B.A Standards, supra at 78, states:

"e. Possession or control

"Subsection (d) of the standard is intended to provide guidance as to whose possession or control over material and information is to be imputed to the prosecutor. It is intended to draw a realistic line which puts outside of that obligation those persons or agencies which may be identified as part of the government but who have no connection with the prosecution and, for practical purposes, may be regarded as third parties. Within the scope of the obligation will be those who would be known to the prosecutor because they are members of his staff or participated in the investigation or evaluation of the case or regularly report to his office or did so in the particular case."

We think Section 2.1(d) not only is in keeping with the intent of the Oregon legislature in its adoption of ORS 135.805 - 135.873, but is a realistic formulation of a rule reasonably required to make effective the exercise of the due process rights assured under *Brady v. Maryland,* supra, *State ex rel Dooley v. Connall,* supra, and *Hanson v. Cupp,* supra. Accordingly, we reject the state's contention that since its police officers refused except upon their own terms to make their service pistols available for test firing, it is excused from the lawful consequences thereof as provided in ORS 135.865.

Finally, we point out that ORS 135.845 provides in part:

"(1) The obligations to disclose shall be per-

formed as soon as practicable following the filing of an indictment or information in the circuit court or the filing of a complaint charging a misdemeanor or violation of a city ordinance. The court may supervise the exercise of discovery to the extent necessary to ensure that it proceeds properly and expeditiously."

In its Commentary to Section 325 the Commission states:

"A. Summary

"Section 325 [Time of disclosure] specifies the time and manner in which a discovery is to occur, and provide for disclosure of evidence which is later discovered and which is subject to the Article.

"The section also permits the court to supervise discovery by rule or order, to the extent necessary to ensure compliance with the Article. The objective of the discovery Article is to provide broad bilateral discovery and it is the consensus of the Commission that the provisions of the Article should be construed to implement that objective.

"B. Derivation

"Subsection (1). No parallel provisions' have been found in the codes of other states or model codes. Subsection (2). Similar provisions appear in Federal Rule 16, the ABA Standards, and the New York, New Jersey and Florida discovery rules.

"C. Relationship to Existing Law

"The provision is new."

■ Taken together with ORS 135.873 relating to protective orders and the Commission's Commentary thereto, it is apparent that the trial court is granted a broad discretion by appropriate order after notice and hearing to make reasonable and necessary provisions to assure compliance with the pretrial discovery provisions of ORS 135.805 - 135.873 and to assure compliance with the due process rights of the Four-

teenth Amendment as described in *Brady v. Maryland,* supra, *Hanson v. Cupp,* supra, and *State ex rel Dooley v. Connall,* supra.

The order suppressing the testimony of Officers Inhofer and Nielsen is reversed and the matter remanded for further proceedings consistent with this opinion.

SCHWAB, C. J., dissenting.

Some factual background is necessary. Defendant is accused of attempted murder based on allegation that he fired a high-powered rifle at a police officer. The rifle bullet supposedly struck a police car behind which the officer was crouching. Other police officers present admittedly fired their revolvers during this incident. Thus, defendant wishes to learn whether the bullet that struck the police car was fired by a high-powered rifle, which would tend to be incriminating, or fired by a revolver, which would tend to be exculpatory.

Defendant's discovery motion requested: "Any bullet, or portions thereof, removed from the police vehicle * * *." As I understand the record, the district attorney belatedly—almost eleven months after first ordered to do so by the trial court—made the recovered bullet available to the defendant for independent testing. Therefore, defendant has obtained everything that he needs. Tests on the recovered bullet should indicate whether it came from a high-powered rifle or from a revolver. Defendant need not prove that the bullet did come from any individual officer's revolver; only that it *did not* come from his rifle. In the absence of any showing that the recovered bullet is inadequate for defendant's legitimate purposes, there is no need shown for defendant to obtain the officers' revolvers for testing.

Aside from the question of need, whether de-

fendant is entitled to obtain the revolvers belonging to Officers Inhofer and Nielsen depends on constitutional and statutory discovery rules. These separate bodies of rules are not, contrary to the implication I read in the majority opinion, necessarily synonymous.

The constitutional rules come from *Brady v. Maryland*, 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), and its progeny. These rules require the prosecution to disclose and make "exculpatory" evidence available to the defense. We have previously held that the *Brady* doctrine is inapplicable when it is not known whether evidence would be exculpatory. *See, State v. Jones,* 18 Or App 343, 525 P2d 194, Sup Ct *review denied* (1974). In other words, *Brady* is not authority for what defendant here seeks to do, that is, obtain evidence of unknown import to test it and determine whether it helps or hurts his case.

The statutory discovery rules, ORS 135.805 to 135.873, were enacted in 1973 as part of the revision of the criminal procedure code. The rule relevant to this case provides: "[T]he district attorney shall disclose to the defendant * * * any * * * tangible objects: (a) [w]hich the district attorney intends to offer in evidence at the trial; or (b) [w]hich were obtained from or belong to the defendant." ORS 135.815(4). The district attorney insists he does not intend to offer the two revolvers in question in evidence at the trial. The revolvers were neither obtained from nor belong to the defendant.

Finding that the revolvers are not subject to the constitutional or statutory (ORS 135.815(4)) rules, and, most importantly, that defendant does not need them to prepare his defense, I would reverse the order appealed from.