Argued January 19, reversed and remanded with instructions
April 3, 1978

STATE OF OREGON, *Respondent,*
*v.*
GREGORY McKEEN, *Appellant.*
(No. 76-669M, No. 76-671M, CA 9224)
576 P2d 804

Enver Bozgoz, Klamath Falls, argued the cause and filed the brief for appellant.

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

Defendant was convicted after trial to the court of disorderly conduct and resisting arrest. ORS 166.025 and 162.315. The charges arose out of an altercation in a Klamath Falls tavern involving among others the defendant and his brother, Benjamin McKeen. The latter is the defendant in a companion case in which the charges are identical but a different police officer is involved. The cases were tried jointly.

The sole assignment of error is that the trial judge erred in overruling defendant's motion to require the state to produce "notes" of certain witnesses, including notebooks of several city police officers who were involved, and in failing to impose any sanctions on account of such failure.

The details of the incident are not necessary to the decision. The salient facts are as follows:

The two McKeen brothers, together with their father, mother, the wife of one of the brothers and a young male friend, went to the tavern on the night of June 16, 1976. The purpose of the family gathering was to celebrate the return of one of the brothers from military service. An altercation developed between one of the McKeen brothers and one of the patrons of the tavern. The police were called. In the meantime the McKeens left the tavern but were brought back by the police. Initially only one police officer, Officer Caskey, arrived at the scene. Later additional officers were called when the altercation suddenly erupted into a violent melee between the McKeen brothers and the police. There was some evidence that other persons may have joined in the fracas. Defendant and his brother were subsequently restrained and arrested.

Later Officers Caskey and Hopson became involved in a scuffle at the jail with defendant's brother, Benjamin McKeen, when they attempted to take his personal property from him for safekeeping.

The same night following the tavern incident each officer named above prepared a narrative report which was filed with the police department. Defendant's counsel was furnished with a copy of each report.

Mr. Caskey (formerly Officer Caskey), who was called by the state, testified that he took notes in his notebook at the scene, and used the notes in preparing his report; that he refreshed his memory prior to testifying by rereading his report, but not his notes; that he did not bring his notebook to court when he testified.

Officer Allen, also called by the state, testified that he took no notes at the scene; that he prepared his narrative report first and later copied most of it into his notebook; that he refreshed his memory by rereading his report; that he glanced through his notes and that "it basically reads the same thing as my report," but "at the time I did not have time to put any notes in my notebook."

Benny Tofell, a tavern patron who had been a participant in the initial altercation with defendant, was also called as a witness by the state. He described the entire episode. He also testified that two days later, at the request of Officer Caskey, he went to the police station and wrote out a narrative statement describing it. The state indicated that this statement became irretrievably lost in the police department.

Mr. Presslar (formerly Sgt. Presslar), who was called by the defense, testified that the city attorney had taken a taped statement from him concerning a civil action brought against the officers by the McKeen brothers for allegedly assaulting them.

The main thrust of defendant's argument on appeal is that as part of his right of discovery he was entitled to inspect (1) the notebooks of the police officers, (2) the signed statement of Benny Tofell and (3) the recorded statement of former Sgt. Presslar, which had been taken by the city attorney presumably for use by

the city in defending a civil damage action brought against the city by defendant and his brother, and that it was reversible error for the trial judge to refuse to require the state to produce the notebooks and other statements, relying principally on *State v. Johnson,* 26 Or App 651, 554 P2d 624, *rev den* (1976).

The state answers the above argument by asserting that the notebooks were not discoverable under ORS 135.815, and therefore there was no error; that the only statement subject to discovery was inadvertently and irretrievably lost.

All parties appear to have treated this issue as one involving only the construction of our criminal discovery statute, ORS 135.815.[1] No contention was made at trial or raised on appeal concerning defendant's right to inspect these notebooks under ORS 45.580.[2] Accordingly, we need not deal with the latter issue here.

[1] ORS 135.815 provides:

"Except as otherwise provided in ORS 135.855 and 135.873, the district attorney shall disclose to the defendant the following material and information within his possession or control:

"(1) The names and addresses of persons whom he intends to call as witnesses at any state of the trial, together with their relevant written or recorded statements or memoranda of any oral statements of such persons.

"(2) Any written or recorded statements or memoranda of any oral statements made by the defendant, or made by a codefendant if the trial is to be a joint one.

"(3) Any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments or comparisons which the district attorney intends to offer in evidence at the trial.

"(4) Any books, papers, documents, photographs or tangible objects:

"(a) Which the district attorney intends to offer in evidence at the trial or

"(b) Which were obtained from or belong to the defendant.

"(5) If actually known to the district attorney, any record of prior criminal convictions of persons whom the district attorney intends to call as witnesses at the trial; and the district attorney shall make a good faith effort to determine if such convictions have occurred."

[2] ORS 45.580 provides:

"A witness is allowed to refresh his memory respecting a fact by anything written by himself, or under his direction, at the time when

In their briefs, which were identical, both defendants take the position that the trial judge "has become so substantially prejudiced, that we seek only one of two remedies. One, dismissal on the basis that the evidence shows that the notes are unproducible, or two, remand for a new trial." As previously noted, defendants were tried jointly.

We summarize our conclusions as follows:

■ (1) The notebooks of the police officers who testified for the state were not discoverable here under the terms of ORS 135.815, since they were not "statements" within the meaning of the statute. *State v. Morrison,* 33 Or App 9, 575 P2d 988 (1978); *State v. Bray,* 31 Or App 47, 569 P2d 688 (1977).

*State v. Johnson, supra,* relied upon by defendant is inapposite. In *Johnson* the undercover informant's two handwritten reports were complete statements of that witness. Both statements were discarded prior to trial. There was no error on this ground.

■ (2) There would be no basis for requiring the state to furnish defendant with a copy of the tape-recorded statement of former Sgt. Presslar taken by the city attorney because it was taken by civil authority in connection with the civil damage suit. Under ORS 135.815 disclosure is limited to "material and information within his [district attorney's] possession or control."

■ (3) Lastly, we conclude that defendant was entitled to receive a copy of the statement Mr. Tofell had

---

the fact occurred or immediately thereafter or at any other time when the fact was fresh in his memory and he knew that it was correctly stated in the writing; but in either case the writing must be produced, and may be inspected by the adverse party, who may, if he chooses, cross-examine the witness upon it, and read it to the jury. The witness may testify from that writing, though he retains no recollection of the particular facts; but the evidence shall be received with caution."

*And see, State v. Jacobs,* 252 Or 433, 450 P2d 542 (1969), which deals with the right of the defense to inspect police notebooks prior to cross-examining police witnesses.

prepared at the police station; however, the prosecutor advised the court during the trial that this statement was irretrievably lost in the police department files. The record indicates that the prosecutor was not aware of the existence of this statement until after the trial had commenced.

As we held in *State v. King,* 30 Or App 223, 230, 566 P2d 1204 (1977), *rev den* 281 Or 1 (1978), and *State v. Graves,* 33 Or App 207, 575 P2d 1021 (1978), absent a showing of prejudice in preparation for trial or presentation of evidence at trial, no sanction is warranted.

We remand this case to the trial court for a finding (a) whether Mr. Tofell's statement was actually unavailable, (b) whether defendants were prejudiced by the failure of the state to furnish them with a copy of Tofell's statement and (c) a determination whether a sanction would be imposed on that account. *State v. Addicks,* 28 Or App 663, 560 P2d 1095 (1977). *See also, State v. Warren,* 31 Or App 1121, 572 P2d 341 (1977).

Reversed and remanded with instructions.