Argued and submitted December 18, 1987, reversed March 23, reconsideration denied
May 6, petition for review allowed June 1, 1988 (306 Or 78)

STATE OF OREGON,
*Plaintiff,*

*v.*

CARL RAYMOND CRENSHAW,
*Defendant.*

In re Contempt of Robert A. Heard.

STATE ex rel CRENSHAW,
*Respondent,*

*v.*

HEARD,
*Appellant.*

(86-0856; CA A43247)

751 P2d 1118

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Laura Graser, Portland, argued the cause and filed the brief for respondent.

Before Warden, Presiding Judge, and Joseph, Chief Judge,* and Van Hoomissen, Judge.

WARDEN, P. J.

---

* Joseph, C. J., *vice* Young, J., deceased.

## WARDEN, P. J.

Defendant (Heard) appeals a trial court order holding him in contempt, ORS 33.010(1)(a), (c), for refusing to obey a previous court order to produce a particular district attorney's file so that it could be copied for possible use as an exhibit for purposes of appeal. We reverse.

In July, 1986, codefendants Crenshaw, Kendrick and Johnson were indicted for an attempted robbery and an attempted burglary committed 21 months earlier. On January 29, 1987, the trial court held an omnibus hearing to consider, among other matters, codefendants' motions to dismiss for preindictment delay. At that hearing, the court quashed a subpena *duces tecum* that commanded Heard, a deputy district attorney, to bring his entire file on the case to the hearing. Later in the hearing, during direct examination of Deputy District Attorney Deits by codefendants, Deits used a district attorney's file to refresh his memory.

After Deits' direct examination ended, Sobel, counsel for Crenshaw, orally requested that the trial court review the file *in camera*.[1] The court denied that request. The following colloquy then took place:

"[SOBEL]: Your Honor, I would ask—and I know this is probably an unusual request—but what I would ask is that the prosecutor make a copy of the file in question and that it be placed under seal for possible appellate purposes, because if we just let the prosecutor walk away with this file now and it turns out that somehow I might, that the Court should have looked through there, we will never know what was in there and there will be no way to establish that my client was prejudiced.

"THE COURT: Fine. I'm prepared to do this. I will direct Mr. Deits to hand the file to the clerk, ask the clerk to make a complete copy of the file and seal it. * * *

"MR. HEARD: That is unacceptable to the State. I don't care particularly about the file, but I simply think, as a matter of law, you lack the authority to do that, and I think so

---

[1] Crenshaw had filed a motion on January 12, 1987, to compel the district attorney to provide previously requested information, including any exculpatory evidence and any information relating to the state's reason for the preindictment delay. In response to Sobel's request that the court examine the file, Heard stated that he believed that he had provided all discoverable material.

for this reason: that you are absolutely correct. We do have a statutory method of enforcing matters of disclosure, and that method is that there are some things I am obliged or required to turn over, and those things I think I have; although, it doesn't necessarily mean copies. Certainly there is a duty to turn over things which are exculpatory. As Mr. Deits, what little he used in refreshing his recollection, I knew [*sic*] nothing that sounded like it was very beneficial for any of the defendants. In fact, quite the contrary.

"The rule of law, as I understand it, if defendant thinks that any of them or each of them have a right to any of those materials, it is incumbent upon them to make a showing to you which causes you, in good faith, to believe that there is something there which may be to their benefit. I haven't heard it. When the showing is made, I will be happy to turn it over for an [i]n camera inspection. Up until that time, I'm declining to deviate from the rule of law. I see no reason why I should have to do that, nor anything that empowers anyone toward [*sic*] me to violate what I think is legal precedent.

"\* \* \* \* \*

"THE COURT:   Mr. Heard, do you have the file? The clerk needs to have that to make a copy.

"MR. HEARD:   As I have indicated to the Court, I'm declining to turn my file over to the Court.

"THE COURT:   Not even for the purpose of copying it?

"MR. HEARD:   No, Your Honor. I think the Court lacks that power without a showing by defendant there is some reason the Court should have my file. I see none. There has been no showing made.

"THE COURT:   So what you are telling the Court is from the standpoint of preserving whatever the record may be here, you will not honor the court's order to just simply deliver over the file to the clerk, have the clerk make photocopies of it, seal the photocopies, deliver over the original file back to you, and neither the Court or defense counsel are going to make one peek whatsoever at that file?

"MR. HEARD:   That's correct, Your Honor. I think it's work product, and without a showing that there is a substantial reason, in fact, involved for doing so, I'm declining to turn it over for the same reasons you think it's a bad precedent in other cases, I do in this case. If my files were available to the Court or anyone simply upon request, I think you don't recognize the existence of work product."

The court then held Heard in contempt and fined him $100.

■■■■ Heard contends that the trial court lacked authority to order him to turn over his entire file, because Crenshaw failed to make the requisite showing under *Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), that material in the file was exculpatory or otherwise favorable to his defense. *State ex rel Dooley v. Connall,* 257 Or 94, 103, 475 P2d 582 (1970). We agree.[2]

In *Connall,* a deputy district attorney was held in contempt for refusing to obey a pretrial order requiring him to present his entire file to the court for an *in camera* inspection to determine whether it contained any material exculpating the defendant. The Supreme Court reversed the contempt conviction, holding that "[s]uch a broad sweeping order—to produce the entire files of the District Attorney—was not justified by the constitutional requirements of due process as set forth in the [decision in *Brady v. Maryland, supra*]." 257 Or at 104. Here, Crenshaw failed to make any showing to support a good faith contention that the file contained material evidence that was favorable to him. *See State v. Koennecke,* 274 Or 169, 179, 545 P2d 127 (1976). We therefore conclude that the order requiring Heard to turn over his entire file was not justified, and the conviction for contempt is reversed. *See State ex rel Dooley v. Connall, supra,* 257 Or at 104.

---

[2] Crenshaw contends that a contemnor may not attack the underlying order in an appeal of a contempt order, citing *State ex rel Mix v. Newland,* 277 Or 191, 560 P2d 255 (1977). There, Newland was held in contempt for not complying with a decree that restrained him from pursuing certain proceedings before the United States Patent Office. The Supreme Court held that Newland could properly be held in contempt for disobeying the restraining order, even though the order was invalid.

"If a court has jurisdiction over the parties and the subject matter, and its order or decree is not complied with, that court may hold the noncomplying party in contempt even if it later appears that the original order or decree was either erroneous or in excess of the court's authority." 277 Or at 200.

The court did not cite or discuss its decision in *State ex rel Dooley v. Connall, supra.* We have previously noted the apparent inconsistency between those cases, concluding that they "suggest that a police or district attorney contemnor in a criminal proceeding may challenge his contempt on the merits of the court's order, although a contemnor in another context may not have that option." *State ex rel Wilson v. Thomas,* 74 Or App 137, 139 n 1, 700 P2d 1045, *rev den* 300 Or 64 (1985). We then addressed the merits of the underlying contempt conviction for a police records custodian's refusal to produce certain records of the Portland Police Bureau's Internal Investigations Division. We conclude that *State ex rel Dooley v. Connall, supra,* is controlling and address the merits in this case.

Reversed.

**JOSEPH, C. J.,** dissenting.

It strikes me as unacceptable to rely at all on *State ex rel Dooley v. Connall,* 257 Or 94, 475 P2d 582 (1970), which is based on the narrowest reading of a since repealed discovery statute, *former* ORS 138.755, and which reflects a traditionalist and grudging reaction to the very idea of discovery in criminal cases. Given the legislature's view of discovery (ORS 135.805-ORS 135.873) and *State ex rel Mix v. Newland,* 277 Or 191, 560 P2d 255 (1977), we should no longer treat *Dooley* as anything but a historical curiosity, a thumb in the dike, if you will. *Pace State ex rel Wilson v. Thomas,* 74 Or App 137, 139 n 1, 700 P2d 1045, *rev den* 300 Or 64 (1985). I would hold that a prosecutor, like anyone else, may not challenge a judicial order made in the exercise of a court's jurisdiction by defying the court.