Submitted on record and briefs March 11, reversed in part; otherwise affirmed November 2, 1994

In the Matter of the Marriage of

Margaret S. ROWLAND,
*Appellant,*
*and*

Robert E. KINGMAN,
*Respondent,*
*and*

Susana ALBA
and the law firm of
Hoevet, Snyder and Miller,
*Contemnors - Respondents.*

(9208-66808; CA A80770)

884 P2d 561

Carl R. Neil and Lindsay, Hart, Neil & Weigler filed the brief for appellant.

Robert E. Kingman filed the brief *pro se.*

Carol G. Westendorf and Mason, Rowlette, McFarland, Westendorf & Richardson filed the brief for contemnors - respondents.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

### LANDAU, J.

Mother appeals from a judgment on the pleadings, ORCP 21B, in favor of defendants, who are father and his Oregon attorneys, on mother's motion for civil remedial sanctions for contempt. ORS 33.015 *et seq.* We affirm in part and reverse in part.

In reviewing the entry of judgment on the pleadings, we assume the truth of the allegations in the pleadings. *Brown v. Insurance Company of North America*, 93 Or App 355, 357, 762 P2d 330 (1988), *rev den* 307 Or 303 (1989). Mother and father were divorced by a dissolution judgment of the Maine Superior Court. The judgment awarded "shared parental rights and responsibilities" for the two children, with mother having primary physical custody. Following the divorce, mother lived in Yarmouth, Maine, and father lived approximately 50 miles away.

Mother married an Oregon resident. A dispute then arose as to the physical custody of the children, and father moved for a modification of the dissolution judgment concerning child custody and visitation. On August 17, 1992, after a three-day evidentiary hearing, the Maine court granted father's motion to modify the judgment. The court's order provides, in part:

> "If [mother] relocates to the state of Oregon, it is in the best interests of [the children] that they primarily reside with [father] in Yarmouth, Maine.

> "Therefore, it is ORDERED that the divorce judgment dated May 16, 1991, shall be amended to change the primary physical residence of the children to [father] if [mother] relocates to Oregon, and on condition that [father] reside in Yarmouth, Maine. It is further ORDERED that primary physical residence for the children shall remain with [mother] if she does not relocate to Oregon, or if [father] does not move to Yarmouth as soon as is reasonably possible after mother's relocation.

> "Further matters, including rights of parental contact, will be addressed in a subsequent order. That order will include a requirement that changes be made in the *transportation* of the children on Wednesday nights and Thursday mornings if [mother] remains in Yarmouth, Maine.

"Prior to the issuance of the subsequent order, the parties will be given the opportunity, among others, to submit further arguments, and proposed agreements, if any, concerning parental contact." (Emphasis in original.)

One week later, without notice to father, mother flew with the children to her husband's Oregon residence. On August 25, 1992, mother's husband informed father by telephone that the children now resided with mother in Oregon.

Father immediately moved to Yarmouth. On August 27, 1992, at approximately 8:30 a.m., father appeared *ex parte* before the Maine court to request a temporary restraining order and initiate contempt proceedings against mother. The Maine court found mother in contempt for removing the children to Oregon, in violation of its August 17, 1992 order; immediately changed physical custody of the children to father; and ordered mother to turn the children over to father for a return to Maine. The court issued a writ of *habeas corpus* and ordered mother to pay father's travel expenses and legal fees. Father then flew to Oregon.

In Oregon, at approximately 1:30 p.m. on August 27, mother's attorney filed certified copies of the original dissolution judgment and the Maine court's August 17, 1992, order with the Multnomah County Circuit Court. Mother's attorney then appeared *ex parte* and obtained a "temporary protective order of restraint," which provided:

"UNTIL CUSTODY OR VISITATION IS DETERMINED BY MEDIATION OR UNTIL FURTHER ORDER OF THE COURT, each parent is restrained and enjoined from interfering with the children's usual place of residence, from interfering with the present placement and daily schedule of the children, from hiding or secreting the children from either parent, from interfering with each parent's usual contact and visitation with the children, from leaving the State of Oregon with the children without written permission of the other parent or the permission of the Court, or from in any manner disturbing the current schedule and daily routine of the children."

The order listed mother's Oregon address as the children's usual place of residence.

Later that afternoon, father and his Oregon attorney appeared *ex parte* in Clackamas County, Oregon, and moved

for a writ of assistance to obtain possession of the children. The writ issued, and father arranged for the police to serve the order at mother's home. Mother, father and their attorneys advised each other of the conflicting orders. Father told the police to proceed to enforce his writ of assistance. They did, and father returned with the children to Maine.

Mother filed a motion for remedial sanctions for contempt of the Multnomah County Circuit Court's temporary protective order of restraint. Father and his counsel moved for judgment on the pleadings. The trial court granted the motion, finding that the temporary protective order of restraint was void for lack of subject matter jurisdiction. According to the trial court, because mother's motion for a temporary protective order of restraint was effectively a request to modify a custody determination of another state court, she was required to comply with a number of jurisdictional requirements of the Uniform Child Custody Jurisdiction Act (UCCJA). Because mother had failed to comply with those jurisdictional requirements, the court concluded that the temporary protective order of restraint was void and could not provide the basis for her contempt motions. The trial court then awarded father's counsel costs and attorney fees.

■     Mother first assigns error to the trial court's entry of judgment on the pleadings in favor of father and his attorneys. A judgment on the pleadings is proper when the allegations, taken together, affirmatively show that the plaintiff has no cause of action or that the defendant has a complete defense. *Beason v. Harcleroad*, 105 Or App 376, 379, 805 P2d 700 (1991).

The parties agree that if the court had jurisdiction over the subject matter, and its order was not complied with, then the court may hold the noncomplying party in contempt, even if the original order was in error. *State ex rel Mix v. Newland*, 277 Or 191, 200, 560 P2d 255 (1977). However, if the court lacked subject matter jurisdiction, then its order was void and could not support a subsequent motion for contempt against the noncomplying party. *State v. Crenshaw*, 307 Or 160, 165-66, 764 P2d 1372 (1988).

Mother argues that the Multnomah County Circuit Court, which issued the temporary protective order of restraint, had subject matter jurisdiction to issue that order. According to mother, the court acted pursuant to ORS 109.850, which she characterizes as authorizing Oregon courts to enforce a foreign custody decree merely upon the filing of that decree. In support of her argument, mother relies on language in ORS 109.850 that provides that a properly filed foreign custody decree

> "has the same effect and shall be enforced in like manner as a custody decree rendered by a court of this state."

Defendants argue that, even assuming that ORS 109.850 is a source of subject matter jurisdiction to enforce foreign custody decrees, the uncontestable fact is that the Multnomah County Circuit Court did much more than enforce a foreign decree. According to defendants, the court changed the Maine decree, which the court could not do without first satisfying a number of jurisdictional prerequisites under the UCCJA. We agree with defendants.

■     The UCCJA provides:

> "If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under the jurisdictional prerequisites substantially in accordance with ORS 109.700 to 109.930 or has declined to assume jurisdiction to modify the decree and the court of this state has jurisdiction." ORS 109.840(1).

To the extent that the language of ORS 109.840(1) does not make it clear, the commissioner's comments on the subject plainly characterize the authority of the court to modify a foreign decree as jurisdictional. Referring to the section of the UCCJA codified at ORS 109.840(1), the commissioner comments:

> "The Act is designed to bring some semblance of order into the existing chaos. It limits custody jurisdiction to the state where the child has his home or where there are other strong contacts with the child and his family. It provides for recognition and enforcement of out-of-state custody decrees in many instances. *Jurisdiction to modify decrees of other states is limited* by giving jurisdictional preference to the

prior court under certain conditions." Prefatory Note, 9 *Uniform Laws Annotated* 118 (1988). (Citations omitted; emphasis supplied.)

In another reference to that section, the commissioner further states:

> "The authority to enforce an out-of-state decree does not include the power to modify it. If modification is desired, the petition must be directed to the court which has *jurisdiction to modify under [ORS 109.840(1)]*." Commissioner's Comment, 9 *Uniform Laws Annotated* 311 (1988). (Emphasis supplied.)

Accordingly, under ORS 109.840(1), an Oregon court lacks subject matter jurisdiction to modify a foreign court's custody decree unless the Oregon court first determines that the foreign court no longer has jurisdiction or has declined to exercise it to modify the decree and that the Oregon court has jurisdiction.

■    Nowhere is it alleged or evident that the Multnomah County Circuit Court determined that the Maine court no longer had jurisdiction, or that it declined to assume jurisdiction or even that an Oregon court had jurisdiction. Therefore, even if the Multnomah County Circuit Court had jurisdiction to enforce the Maine custody decree, it lacked jurisdiction to modify it.

Mother insists that the temporary protective order of restraint did not, in fact, modify the Maine custody decree. According to mother, the Multnomah County Circuit Court's order was a "status quo order" and nothing more. All that is required to dispose of that argument is a review of the language of the two instruments. The Maine custody decree allows father visitation of his children at specified times *in Maine*. The temporary protective order of restraint establishes, for the first time, the children's usual place of residence *in Oregon*, and prohibits father from seeing the children anywhere else without mother's or the court's permission. That is not merely enforcement of the Maine custody decree. Rather, it is a plain and substantial modification of the Maine custody decree. Because the jurisdictional prerequisites of ORS 109.840(1) were not satisfied, the Multnomah County Circuit Court was without authority to make that

modification. Accordingly, the trial court did not err in granting defendants' motion for judgment on the pleadings.

Mother next assigns error to the trial court's award of attorney fees to father's Oregon attorneys. The Oregon attorneys claim fees under ORS 107.445, which provides, in part:

> "In any proceeding brought under ORS 107.095, 108.110 and 108.120, and in any contempt proceeding brought to compel compliance with any order or decree in any suit for marital annulment, dissolution or separation, the court may make an order awarding to a party, or directly to the party's attorney, a sum of money determined to be reasonable as an attorney fee at trial and on appeal therein."

Mother does not contest the reasonableness of the amount of the attorney fees, but instead argues that ORS 107.445 does not provide a basis for attorney fees in this case. Mother argues that this is not a "contempt proceeding to compel compliance," because she sought only compensatory damages for past contempt, rather than sanctions to obtain future compliance with the order. The thrust of mother's argument is that the plain meaning of the statutory language does not provide for attorney fees in this case. We agree.

When interpreting a statute, we attempt to ascertain the intent of the legislature. We first look to the text and context of the statutes themselves. If the intent of the legislature is not clear from the text and context, then we consider legislative history. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

ORS 107.445 limits its application to "contempt proceeding[s] brought to compel compliance." A court "compels compliance" with its order when it uses its power to force a party to obey the order. Here, it was not possible for the trial court to compel father to obey the court order. It was too late for that. The trial court could have only punished contempt of the order. Therefore, the plain language of ORS 107.445 excludes this case from its scope. Words of common usage should be given their "plain, natural, and ordinary meaning." *State v. Langley*, 314 Or 247, 256, 839 P2d 692 (1992), *on recon* 318 Or 28, 861 P2d 1012 (1993). To the extent that ORS 107.445 is ambiguous, an examination of the legislative history does not reveal an intent that the "compel compliance"

language was to be broadened beyond its natural and ordinary meaning. The trial court erred in awarding attorney fees.

Award of attorney fees reversed; otherwise affirmed.