Submitted November 26, 2019, affirmed January 2, 2020

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## TINA MICHELLE ARNOLD,
aka Tina Arnold,
*Defendant-Appellant.*

Multnomah County Circuit Court
18CN02084; A168230

458 P3d 725

Defendant appeals a judgment of contempt, ORS 33.015(2)(b). Defendant was found in contempt for violating an Elderly Persons and Persons with Disabilities Abuse Prevention Act (EPPDAPA) restraining order, ORS 124.005 to 124.040, that had prohibited defendant from entering or attempting to enter J's home. Defendant argues that the trial court erred in denying her motion for judgment of acquittal and finding that she "willfully" violated the restraining order, as is required for a finding of contempt under ORS 33.015(2)(b), because the order did not correctly name her. *Held*: When a defendant is personally served with a restraining order and has notice that the order applies to her, a defendant may not violate the order and then collaterally attack the validity of the order in a subsequent contempt proceeding. The record contained sufficient evidence from which the trial court could find that defendant knew that the order applied to her and restrained her from entering or attempting to enter J's residence and, thus, that the violation of the order was done "willfully." Therefore, the trial court did not err when it denied defendant's motion for judgment of acquittal and found defendant in contempt.

Affirmed.

Kathryn L. Villa-Smith, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Brett J. Allin, Deputy Public Defender, Office of Public Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Lauren P. Robertson, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Sercombe, Senior Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Defendant appeals a judgment of contempt, ORS 33.015(2)(b).[1] Defendant was found in contempt for violating a restraining order issued under the Elderly Persons and Persons with Disabilities Abuse Prevention Act (EPPDAPA), ORS 124.005 to 124.040. Defendant argues that the trial court erred by denying her motion for judgment of acquittal (MJOA) and concluding that there was sufficient evidence that she "willfully" violated the restraining order, as required for a finding of contempt under ORS 33.015(2)(b). Defendant argues that she did not willfully violate the restraining order because it did not correctly name her. We hold that, when a defendant is personally served with a restraining order and has notice that the order applies to her, a defendant may not violate the order and then collaterally attack the validity of the underlying order in a subsequent contempt proceeding. Here, our review of the record leads us to conclude that the record contains sufficient evidence from which the trial court could find that defendant had notice that the order applied to her and restrained her from entering or attempting to enter the petitioner's residence, and, thus, the violation of the order was "done willfully." ORS 33.015(2). Accordingly, we affirm.

We "review the denial of a motion for judgment of acquittal on punitive contempt to determine whether the record contains evidence from which a rational trier of fact, drawing all reasonable inferences in the light most favorable to the state, could find all elements of contempt beyond a reasonable doubt." *State v. Graham*, 251 Or App 217, 218, 284 P3d 515 (2012). In accordance with that standard of review, we recite the material facts in the light most favorable to the state.

Defendant's name is Tina Arnold. Defendant was married to F Ball, but defendant did not legally change her last name to Ball.

---

[1] ORS 33.015(2) provides, in part:

"'Contempt of court' means the following acts, done willfully:

"* * * * *

"(b)  Disobedience of, resistance to or obstruction of the court's authority, process, orders or judgments."

J is defendant's father-in-law, and defendant lived at J's residence. J knew defendant "[a] little by Arnold but [mostly by the name] Ball because of the marriage" to J's step son, F Ball. In April 2018, J obtained a restraining order against defendant that prohibited "Tina Ball" from willfully entering or attempting to enter J's residence. *See* ORS 124.010(1)(b) (an elderly person subject to abuse within the preceding 180 days may petition for relief if the abuser presents an immediate and present danger of further abuse). Leahy, a deputy with the Multnomah County Sheriff's Office, personally served defendant with that restraining order at the residence that defendant shared with J. *See* ORS 124.022(1) ("A sheriff may serve a restraining order issued under ORS 124.020[.]"). When Leahy served defendant with the restraining order, he provided defendant with a copy of the restraining order, the restraining order petition, and a notice to defendant that she could request a hearing to contest the order. After serving defendant with the order, Leahy told defendant that she needed to leave the residence immediately and defendant complied.

In May 2018, J's daughter contacted the police because defendant was at J's residence. Officer Maul received the report of the restraining order violation and went to J's residence. When Maul arrived, defendant was at the door asking for help to go inside. Defendant told Maul that "she had been served the restraining order," but "she felt it didn't apply to her because *** [t]hey had used her married name and *** she had not legally changed her name to that name." Maul arrested defendant for violating the restraining order.

The state charged defendant with violating the restraining order based on defendant willfully entering or attempting to enter J's residence. The complaint listed defendant in the caption of the complaint as "Tina Michelle Arnold *** also known as Tina Ball."

At trial, the parties adduced evidence of the historical facts that we outlined above. In addition, the state presented evidence that defendant got mail at J's "address with Tina Ball on it," that defendant was known by others as Tina Ball, and that, when defendant was served with the restraining order, the attached petition for the restraining order

described defendant's relationship to J as his "daughter-in-law," and stated that she lived at J's residence. Moreover, the attached petition specifically alleged that "Tina *** moved into [J's] home and then moved her husband [F] Ball in," and defendant admitted that she looked at the order after being served and recognized J's name.

Defendant moved for judgment of acquittal, arguing that the trial court could not find her in contempt because defendant's name is "Tina Arnold," and "Tina Ball was the person that the restraining order was served on" and "the person that the restraining order was to be enforced against[,] *** so there's no actual evidence that Tina Arnold violated a restraining order." More specifically, defendant contended that the trial court could not find her in contempt for "willfully" violating that order under *State v. Nicholson*, 282 Or App 51, 383 P3d 977 (2016), because "she was served with a restraining order that did not have her correct name on it, so she believed she was allowed to go back there." The state responded that the evidence of defendant being served with the order, the contents of the order, and the evidence adduced at trial were sufficient for the court to find that defendant knew that the order was intended to apply to her and, thus, defendant willfully violated the order.

The trial court subsequently made the following findings:

"[F]irst I note that the charging instrument is this: 'Tina Michelle Arnold, *** also known as Tina Ball.'

"So, the evidence *** shows that [defendant] was served with the restraining order. She testified that she was served and that she had to leave right away, and so, she knew that she had this restraining order.

"And, the person who has the restraining order, [J], testified that he'd known her as Ms. Ball. And, I find [J's daughter's] testimony that [defendant] also receives mail in the name of Ball to be credible. In addition, she's married to a Mr. Ball.

"So, I do find that there's a willful violation of the restraining order and do find that [defendant] is in contempt of court for violating that order."

Accordingly, the trial court denied defendant's MJOA and entered a judgment finding defendant in contempt.

On appeal, defendant argues that the trial court erred when it entered a judgment of contempt because (1) the state "failed to present evidence that the restraining order applied to defendant at all, much less that the order prohibited *defendant* from going to the residence" and, (2) "the state did not prove that defendant *willfully* violated the order." (Emphases in defendant's brief.)[2] The state responds that (1) the record is sufficient to support a finding that the restraining order applied to defendant and, (2) "[d]efendant's knowledge of the restraining order permitted the trial court to infer that defendant willfully violated the order." We agree with the state.

"To prove contempt, the state must establish the existence of a valid court order, the defendant's knowledge of that order, and the defendant's willful noncompliance with that order." *State v. Beleke*, 287 Or App 417, 421, 403 P3d 481, *rev den*, 362 Or 208 (2017). However, "in the context of punitive contempt, the validity of the order is not dispositive" and, if the defendant is aware of the requirements of that order and willfully violates it, a trial court does not err in denying a defendant's motion for judgment of acquittal. *Graham*, 251 Or App at 221 (a "court may hold the noncomplying party in contempt even if it later appears that the original order or decree was * * * erroneous" (internal quotation marks omitted)). As we have discussed, "'willfully' for purposes of ORS 33.015(2) meant, and means, intentionally and with knowledge that the act or omission was forbidden conduct." *Nicholson*, 282 Or App at 62 (internal quotation marks and brackets omitted). But a "defendant who acts based on a good faith belief that a judicial order has been dismissed cannot be deemed to have acted with knowledge that it was forbidden conduct." *Id*. (internal quotation marks omitted).

Defendant points to *Nicholson* as controlling precedent under these circumstances, but defendant's reliance

---

[2] Although defendant assigns error to the trial court finding defendant in contempt, we understand her to be assigning error to the trial court's denial of her MJOA.

on *Nicholson* is misplaced. In that case, there was no factual issue concerning the defendant's "contemporaneous, good faith belief" that the FAPA order had been dismissed. *Id*. at 62. Rather, the issue was whether, after the trial court explicitly credited the defendant's testimony that her estranged husband had told the defendant that he was at the courthouse getting the FAPA order dismissed and found that the defendant "actually, and in good faith, believed that the order had been set aside," the defendant could be found in contempt.[3] *Id*. at 55-56. On appeal, in light of the trial court's express finding that the defendant had a "contemporaneous, good faith belief" that the FAPA order had been dismissed, we concluded that the trial court erred in finding the defendant in contempt, because "[a] defendant who acts based on a good faith belief that a judicial order has been dismissed cannot be deemed to have acted with knowledge that it was forbidden conduct," *i.e.*, "'willfully' for purposes of ORS 33.015(2)(b)." *Id*. at 62.

Here, by contrast, the issue is whether there was sufficient evidence for the trial court to find that defendant knew that the order applied to her when it was served. Defendant contends that she had a good faith belief that the order did not apply to her because it listed her name as Tina Ball. For the following reasons, we reject defendant's argument that, although the sheriff personally served defendant with the restraining order where she resided, "a reasonable person would not understand that a court's order applies to him or her unless it lists his or her legal name," and, thus, defendant could not have willfully violated the order.

First, as we have explained, the rules for personal service under ORCP 7 "do not require an actual in-hand delivery, or a face-to-face encounter with an acknowledgement of identity from the person to be served," because "[t]o so require would allow a defendant to defeat service simply by refusing to identify himself or accept the papers" and "[i]t would make personal service a degrading game of wiles and tricks, rather than a procedure for insuring that a

---

[3] The essential question in *Nicholson* was one of statutory interpretation, not sufficiency of the evidence.

defendant receive actual notice of the subject and pendency of an action." *Business & Prof. Adj. Co. v. Baker*, 62 Or App 237, 240-41, 659 P2d 1025 (1983); *see* ORCP 9 A ("every order \*\*\* and every \*\*\* notice \*\*\* shall be served on each of the parties"). And, even when a defendant is not served in compliance with ORCP 7, we determine whether the service was adequate to provide a defendant notice of the court's order by "examining the totality of the circumstances." *Hoek v. Schwabe, Williamson & Wyatt*, 149 Or App 607, 617, 945 P2d 534 (1997).

Under the circumstances of this case, involving a household dispute among cohabiting family members, there was ample evidence to support the trial court's finding that defendant knew that the restraining order applied to her. Defendant was personally served at her home with the restraining order, and defendant complied with the officer's instruction that she needed to leave the residence immediately. *See Business & Prof. Adj. Co.*, 62 Or App at 239-40 (concluding that personal service was adequate, notwithstanding the lack of a face-to-face encounter between the process server and the defendant, when the former recognized the latter's voice through a closed door, announced to the defendant standing behind the door that he was being served, and wedged the papers securely in the area of the door); *State v. Tryon*, 242 Or App 51, 53-59, 255 P3d 498 (2011) (trial court did not err in admitting the sheriff's unsworn return of service of the EPPDAPA restraining order on respondent to establish defendant's knowledge of the restraining order in a contempt proceeding). Moreover, there was testimony from J and J's daughter that defendant was also known as Tina Ball and received mail at J's residence under that name. *See Nicholson*, 282 Or App at 56 (observing that "if the trial court discredited defendant's testimony that she believed that the order was no longer in effect, then that alone would have established willfulness"). Additionally, defendant was married to J's son, [F] Ball, and the petition attached to the order specifically described defendant's relationship to J and alleged that "Tina \*\*\* moved in [J's] home and then moved her husband [F] Ball in." Therefore, there was sufficient evidence for the trial court to find that defendant knew that the order applied to her.

We turn to the second reason that we reject defendant's argument. To the extent that defendant intends to challenge the validity of the underlying order, it is an impermissible collateral attack.

"As a general rule, a contemnor may not attack the underlying [order] that he or she violated in an appeal of a judgment of contempt, although there are exceptions to that rule." *Barrett and Barrett*, 320 Or 372, 380, 886 P2d 1 (1994). The Supreme Court stated that general rule as follows:

> "If a court has jurisdiction over the parties and the subject matter, and its order or decree is not complied with, that court may hold the noncomplying party in contempt even if it later appears that the original order or decree was either erroneous or in excess of the court's authority. The integrity of the judicial process demands compliance with court orders until such time as they are altered by orderly appellate review. Litigants are not entitled to sit in judgment on their own cases, and they must follow the appropriate channels for review of decisions they believe to be invalid. Unless and until an invalid order is set aside, it must be obeyed."

*State ex rel Mix v. Newland*, 277 Or 191, 200, 560 P2d 255 (1977).[4] The exception to that general rule applies when "there has been no other opportunity to raise the issue." *Id.*; *see also State v. Crenshaw*, 307 Or 160, 168, 764 P2d 1372 (1988) (holding "that a challenge to the merits of the underlying order may be made in any appeal from an order of contempt where, for constitutional, statutory or practical reasons, no other remedy, either by appeal or mandamus, was available").

In this case, as explained below, that exception does not apply because defendant had an adequate opportunity to contest the validity of the underlying order and have "the legal efficacy of the order" examined "in a meaningful way." *Id.* at 165.

---

[4] The trial court's exercise of jurisdiction over defendant or the subject matter in this case has never been challenged by defendant. *See* ORS 124.010(1)(d) ("The circuit court has jurisdiction over all proceedings under ORS 124.005 to 124.040.").

"A restraining order shall remain in effect until the order expires or is terminated by court order." ORS 124.030(2)(a). Under ORS 124.020, if the petitioner is granted a restraining order at an *ex parte* hearing, the order is valid "for a period of one year" and "[t]he county sheriff shall serve the respondent personally unless the petitioner *** elects to have the respondent served personally by a private party or by a peace officer who is called to the scene of a domestic disturbance at which the respondent is present." Under ORS 124.020(9)(a), "[w]ithin 30 days after a restraining order is served on the respondent," the respondent "may request a court hearing on any relief granted" by submitting a hearing request form. When the respondent "requests a hearing pursuant to ORS 124.020(9)," the "court shall hold a hearing within 21 days following the request *** and may cancel or change any order issued under ORS 124.020." ORS 124.015(1). Thus, defendant had a statutory right to request a hearing to contest the validity of the underlying order, and, thus, the opportunity to obtain meaningful relief and to protect her rights.

Furthermore, if defendant was denied relief at that hearing, she also had the opportunity to appeal the final order. *See* ORS 19.205(5) (concerning appeals from special statutory proceedings); *Crenshaw*, 307 Or at 166 ("In cases of indirect contempt, a direct appeal normally is available and, where the harm that will result from the finding of contempt is apparent and an appeal is either unavailable or would come too late to avert the harm caused by the challenged order, a discretionary writ of mandamus may be sought."); *Smith v. Baker*, 296 Or App 96, 97-98, 437 P3d 1213 (2019) (appeal of the continuation of an EPPDAPA order from a hearing held at the respondent's request pursuant to ORS 124.020(9) and ORS 124.015).

Here, defendant testified that she reviewed the order and noticed that it listed her name as Tina Ball instead of Tina Arnold. The front of the order states prominently, "**TO THE RESPONDENT: VIOLATION OF THIS RESTRAINING ORDER MAY RESULT IN YOUR ARREST AND IN OTHER PENALTIES. REVIEW THIS ORDER CAREFULLY. EACH PROVISION MUST BE OBEYED.**

**SEE YOUR RIGHTS TO A HEARING.**" (Uppercase and boldface in original.) Furthermore, a "notice to respondent/ request for hearing" form was attached to the order that was served on defendant. That form explains:

> "**THIS FORM MUST BE ATTACHED TO ALL COPIES OF THE RESTRAINING ORDER**
>
> "**TO RESPONDENT: A Temporary Restraining Order has been issued by the court which affects your rights and is now in effect. THIS ORDER BECOMES EFFECTIVE IMMEDIATELY. If you wish to contest the continuation of this Order, you must complete this form and mail or deliver it to [the trial court.]**
>
> "* * * * *
>
> "Requests for hearing **must be filed within 30 days after you receive the order.** * * * The hearing will be held within 21 days. At the hearing a judge will decide whether the order should be canceled or changed. The only purpose of this hearing will be to determine if the terms of the order should be canceled, changed, or extended.
>
> "Keep in mind this order remains in effect until the court that has issued the order amends or dismisses, *or until it expires.*"

(Uppercase, boldface, underscoring, and emphasis in original).

Because the evidence supports the trial court's finding that defendant was served with the order and knew that the order applied to her, defendant was required to comply with the order and follow the process that she was given notice of to raise her challenge to the validity of the order. What defendant could not do is fail to follow the appropriate channels to challenge the order that she believed was invalid, violate the order, and then collaterally attack the validity of the underlying order in a contempt proceeding.

That is not how our judicial process functions, and accepting defendant's argument would invite "a degrading game of wiles and tricks" by respondents who are accused of contempt of court for violating the underlying restraining order. *Business & Prof. Adj. Co.*, 62 Or App at 240.

In sum, defendant did precisely what *Newland* admonishes against—there was sufficient evidence that

defendant knew that the order applied to her, and there was also sufficient evidence that she unilaterally "sat in judgment of [her] own case" and willfully went to J's home in violation of the order. *Barrett*, 320 Or at 382. Defendant had the opportunity to contest the order after it was served and did not do so. Because evidence in the record supports a reasonable inference that defendant knew that the restraining order applied to her and that defendant willfully violated the restraining order, the trial court did not err when it denied defendant's MJOA.

Affirmed.